IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVID CORSARO, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:21-CV-01748-N |
| § | |
| COLUMBIA HOSPITAL AT § | |
| MEDICAL CITY DALLAS § | |
| SUBSIDIARY LP, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendants Columbia Hospital at Medical City Dallas Subsidiary, L.P. and HCA Holdings, Inc.'s motion to dismiss and compel arbitration [12]. Because Plaintiff David Corsaro has not met his burden to overcome the presumption of mental capacity to contract, he has not shown the arbitration agreement is invalid, and the Court grants the motion.

### I. ORIGINS OF THE EMPLOYMENT DISPUTE

This dispute arises from Corsaro's employment with Defendants.[1]  Corsaro worked for Defendants as a Technical Analyst from 2017 until his termination in 2019. Corsaro claims that he suffers from meningioma (a type of brain tumor) and has experienced "a number of [related medical] issues stemming from brain tumors, brain surgery, and brain

---

[1] The Court acknowledges the note in Defendants' brief that an entity called HCA IT&S Field Operations, Inc., not Defendants, employed Corsaro. *See* Defs.' Br. 2 n.1 [13]. Because the details and relevance of this fact for the purposes of the present motion are unclear, the Court refers to "Defendants" as Corsaro's employer throughout this Order.

ORDER – PAGE 1

radiation." Aff. of Pl. David Corsaro ¶ 2 [29-1]. According to Corsaro, because of his medical condition, he sometimes has difficulty processing complex information. *Id.*

When Corsaro started his job with Defendants, he electronically signed an agreement that incorporated by reference a mandatory arbitration policy as a part of Defendants' onboarding process. Defs.' App. 11 [14]. The arbitration policy provides in part that "claims relating to involuntary terminations, . . . retaliation claims [and] claims relating to workplace accommodation due to physical or mental disabilities" must be submitted to arbitration. *Id.* at 6.

Corsaro filed this lawsuit against Defendants raising claims for retaliation, disability discrimination, and failure to provide reasonable accommodations in violation of state and federal law. Pl.'s Compl. 13-15, 18-19 [1]. Defendants filed a motion to dismiss and compel arbitration pursuant to the mandatory arbitration clause in Corsaro's onboarding agreement. Corsaro opposes the motion arguing the arbitration clause is invalid due to his cognitive impairment.

## II. Dismissal Is Not Proper Under Rule 12(b)(1) or Rule 12(b)(6)

The Court begins by noting dismissal is not proper under either provision of Federal Rule of Civil Procedure 12 cited in Defendants' motion. Defendants argue the Court must dismiss Corsaro's claims for lack of subject matter jurisdiction and failure to state a claim because Corsaro signed a valid arbitration agreement encompassing his claims. Defs.' Br. 2 [13]; Fed. R. Civ. P. 12(b)(1), (6). However, Rule 12(b)(1) does not require dismissal because arbitration agreements "implicate forum selection and claims-processing rules not [the] subject matter jurisdiction" of federal courts. *Ruiz v. Donahoe*, 784 F.3d 247, 250

ORDER – PAGE 2

(5th Cir. 2015); *see In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484. 514-15 (N.D. Tex. 2019) (Fitzwater, J.); *Parrott v. D.C.G., Inc.*, 2020 WL 1876096, at *2 (N.D. Tex. 2020). The Court denies the motion to dismiss under Rule 12(b)(1).

Additionally, Rule 12(b)(6) is not the proper vehicle for enforcement of the arbitration agreement because Defendants' submission and invocation of the agreement does not show Corsaro's complaint fails to include "enough facts to state a claim to relief that is plausible on its face" for claims unrelated to the agreement. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (noting that on a motion to dismiss for failure to state a claim, courts should not consider documents attached to the motion to dismiss unless they "are referred to in the plaintiff's complaint and are central to her claim"). Accordingly, the Court denies Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim. The Court proceeds to analyze the motion to compel arbitration under the framework set out by the Fifth Circuit.

### III. MOTION TO COMPEL ARBITRATION STANDARD

The Federal Arbitration Act requires district courts to compel arbitration if they determine that there is a valid arbitration agreement encompassing the issues in dispute. 9 U.S.C. § 3; *see also Haliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019). Courts in the Fifth Circuit conduct a two-step inquiry when considering a motion to compel arbitration. First, a court must determine whether the parties agreed to arbitrate the dispute by considering "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the

ORDER – PAGE 3

scope of that arbitration agreement." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). Second, if the Court determines the claims are subject to a valid arbitration agreement, a court must determine "whether any federal statute or policy renders the claims nonarbitrable." *Id.* Courts apply state contract law to determine whether the arbitration agreement is valid and the claims are within its scope, and the party seeking to compel arbitration bears the burden of establishing these elements. *Haliburton Energy Servs., Inc.*, 921 F.3d at 530-31. Evidence presented to compel or resist arbitration must be competent summary judgment evidence. *See Gallagher v. Vokey*, 860 F. App'x 354, 358 (5th Cir. 2021) (unpub.).

### IV. THE COURT EXERCISES ITS DISCRETION TO DISMISS CORSARO'S CLAIMS AGAINST DEFENDANTS

Corsaro does not dispute that his claims fall squarely within the scope of the arbitration policy, and neither party has identified a federal statute or policy that renders Corsaro's claims nonarbitrable. Accordingly, the Court need only determine whether the arbitration agreement is valid and enforceable.

#### A. *The Arbitration Agreement Is Properly Authenticated and Admissible*

Corsaro challenges the admissibility of the arbitration agreement Defendants attach to their motion. Specifically, Corsaro argues that Defendants failed to authenticate the arbitration agreement because Shanna Warren, whose affidavit Defendants rely upon in their initial motion, did not oversee Defendants' human resources department until after Corsaro completed the onboarding process. Pl.'s Resp. Br. 7-8 [29]. Without addressing whether Corsaro's statement of the law is correct, the Court notes that Defendants included

ORDER – PAGE 4

with their reply brief an affidavit from Lisa Reyes, who was Defendants' Human Resources Director at the time Corsaro executed the agreement. *See* Aff. of Lisa Reyes [37-1].[2] The affidavit attested to the authenticity of the arbitration policy and the signed agreement Defendants submitted. Under Federal Rule of Evidence 901(b)(1), the testimony of Defendants' affiant with personal knowledge of Defendants' policies at the time Corsaro began his employment is sufficient to authenticate the document as constituting an accurate copy of the arbitration agreement. FED. R. EVID. 901(b)(1).

### B. Defendants Have Met Their Burden to Show a Valid Arbitration Agreement Exists

**1. The Arbitration Agreement Satisfies the Elements of a Binding Contract.** – The Court holds that Defendants have met their initial burden to show the existence of an arbitration agreement. Under Texas law, a contract exists if there is "(1) an offer, (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012) (citation omitted). The arbitration agreement here contains a mutual promise that each party will arbitrate certain disputes arising from their employment relationship. Defs.' App. 5-6. It is undisputed that Corsaro electronically executed the agreement. *Id.* at 11; Aff. of Pl. David Corsaro ¶ 9. Thus, Defendants have met their initial burden to prove a valid arbitration agreement exists unless Corsaro has evidence to rebut the formation of a

---

[2] There is no requirement under Rule 901 that evidence produced to authenticate a document be produced simultaneously with the document attached to a party's motion and initial briefing. FED. R. EVID. 901(a), (b).

ORDER – PAGE 5

contract. *See Ron v. Ron*, 836 F. App'x 192, 196 (5th Cir. 2020) (unpub.) (citing *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 120 (Tex. App. — El Paso 2018, no pet.) ("The signed . . . contract sets out the terms of the underlying transaction, and the arbitration clause evinces a mutual intent to arbitrate. As such, we find that there is prima facie evidence of formation[.]")).

Corsaro has not produced evidence sufficient to show that the agreement does not satisfy the basic elements of a contract. To the extent Corsaro argues his mental state prevented a "meeting of the minds," the Court disagrees. *See* Pl.'s Resp. Br. 3.[3] Under Texas law, the meeting of the minds requirement is measured objectively by what the parties said and did and not on their subjective state of mind. *In re Capco Energy, Inc.*, 669 F.3d at 280 (citation omitted). Corsaro did not undertake a course of conduct inconsistent with the agreement. Nor has Corsaro shown he did not accept Defendants' offer. Under Texas law, a party who signs a contract is presumed to have read and understood its terms, *In re Intern. Profit Assocs., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009), and an employee accepts an arbitration agreement even without a signature by continuing to work after receiving notice of its terms. *In re Dillard Dept. Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006) ("If the employee receives notice and continues working with knowledge of the modified employment terms, the employee accepts them as a matter of law."). Corsaro both continued working and signed the contract, acknowledging he had

---

[3] Corsaro's brief does not clearly distinguish between his arguments related to procedural unconscionability, capacity, and meeting of the minds. *See* Pl.'s Resp. Br. 3-6. The Court nonetheless analyzes the effect of Corsaro's evidence of cognitive impairment under each of the three doctrines raised in Corsaro's brief.

reviewed, understood, and agreed to the mandatory arbitration policy. Defs.' App. 11. Because the arbitration agreement satisfies the elements of a contract under Texas law, a contract exists unless Corsaro can establish a defense to contract formation.

### 2. Corsaro Has Not Overcome the Presumption of Capacity to Contract. –

Corsaro argues a valid agreement was never formed because he lacked the mental capacity to enter the arbitration agreement due to his cognitive disability. The only evidence in the record regarding Corsaro's cognitive disability is Corsaro's affidavit that states:

> 2. In 2010 I was diagnosed with Meningioma and have had a number of issues stemming from brain tumors, brain surgery, and brain radiation which resulted in long-term cognitive impairment. As a result, I have difficulty, at times, processing information, including complex topics.
>
> 3. I applied for and was offered a job at Medical City Dallas. I accepted that job. The job did not require me to process complex written material.

Aff. of Pl. David Corsaro ¶¶ 2-3.

"Texas 'law presumes every party to a legal contract to have had sufficient mental capacity to understand . . . the transaction involved, and, to overcome this legal presumption, the burden of proof rests upon the party asserting to the contrary.'" *Prince-Moore v. Texas Dow Employees Credit Union*, 2021 WL 5709880, at *3 (5th Cir. 2021) (unpub.) (citing *Swink v. City of Dallas*, 36 S.W.2d 222, 224 (Tex. Comm'n App. 1931, holding approved)). A person has the mental capacity to contract under Texas law "if she appreciate[s] the effect of what she [i]s doing and underst[ands] the nature and consequences of her acts." *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 845 (Tex. 1969). "Documents executed by one who lacks sufficient legal or mental capacity may be avoided." *Anderton v. Green*, 555 S.W.3d 361, 371 (Tex. 2018) (citation omitted). Courts

ORDER – PAGE 7

may look to evidence of preexisting circumstances from times other than the day of contracting if it tends to show one's state of mind during the relevant events. *Id.*

The factual record here is far too limited for Corsaro to overcome the presumption of contractual capacity. As discussed above, Corsaro's affidavit is the only evidence of Corsaro's mental state before the Court. The only portion of the affidavit providing any detail about Corsaro's ability to function in day-to-day life is his own conclusion that he has "difficulty, at times, processing information, including complex topics." Aff. of Pl. David Corsaro ¶ 2. Corsaro has submitted no medical records, no medical testimony, and no evidence from third parties regarding his mental condition. Courts have held similar records insufficient to overcome the presumption of capacity under Texas law where conclusory statements about a party's mental condition are unsupported by other evidence of his or her inability to understand the nature of a transaction. *See Prince-Moore v. Tex. Dow Emps. Credit Union*, 2021 WL 5709880, at *3-4 (5th Cir. 2021) (unpub.) (citing *Buddy L, Inc. v. Gen. Trailer Co.*, 672 S.W.2d 541, 548 (Tex. App. — Dallas 1984, writ ref'd n.r.e.)).

The allegations in Corsaro's complaint support the conclusion that Corsaro's affidavit is insufficient to overcome the presumption of capacity.[4] According to Corsaro's complaint, he effectively performed the duties of his position as a Technical Analyst for almost one year after signing the arbitration agreement without any need for

---

[4] While allegations in the complaint are not competent summary judgment evidence, they are binding admissions properly considered at summary judgment. *See Morales v. Dept. of Army*, 947 F.3d 766, 769 (5th Cir. 1991).

ORDER – PAGE 8

accommodation and without even telling his supervisor about his medical problems. *See* Compl. ¶¶ 22, 25-28. These allegations contradict any claim that Corsaro struggled to process complex information to such a degree that he lacked the capacity to agree to the arbitration policy. Corsaro has failed to overcome the presumption of capacity to contract as a matter of law. Thus, the Court determines that there is a valid arbitration agreement unless Corsaro has presented evidence sufficient to prove the contract is unenforceable.

### C. The Arbitration Agreement Is Not Procedurally Unconscionable

Corsaro argues the arbitration agreement is procedurally unconscionable because the policy was not explained to him and he had no opportunity to learn what it meant due to his cognitive limitations and inability to understand the agreement. The FAA requires district courts to apply state contract law to determine whether an arbitration agreement is valid. *Papalote Creek II, L.L.C. v. Lower Colo. River Auth.*, 918 F.3d 450, 454 (5th Cir. 2019). Thus, the Court analyzes Corsaro's procedural unconscionability defense under Texas law.

Procedural unconscionability refers to the circumstances surrounding the adoption of the provision, and the purpose of the doctrine is to prevent unfair surprise or oppression. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677-79 (Tex. 2006). An agreement is not procedurally unconscionable simply because one party did not understand it. *In re Halliburton Co.*, 80 S.W.3d 566, 568-69 (Tex. 2002). Unequal bargaining power alone is insufficient to establish procedural unconscionability, especially in the employment context where employers may present "take it or leave it" terms to at-will employees. *Id.*

Corsaro argues the agreement is procedurally unconscionable because, despite his cognitive limitations, he was "simply asked to check a box which he did with no oversight and no explanation as to what the box was." Pl.'s Resp. Br. 3-4. Corsaro cites *Fleetwood Enterprises, Inc. v. Gaskamp* for the proposition that courts applying Texas law have found agreements procedurally unconscionable in "situations in which one of the parties appears to have been incapable of understanding the agreement." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002). However, the cases cited by the Fifth Circuit in *Gaskamp* involved situations in which the party seeking to compel arbitration pressured a vulnerable party or otherwise did not make an explanation available to them at all. *See In re Turner Bros. Trucking Co., Inc.*, 8 S.W.3d 370, 377 (Tex. App. — Texarkana 1999, no pet.) (noting the employees who presented the documents to the functionally illiterate plaintiff "did not themselves understand the agreement"); *Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937, 940-41 (S.D. Tex. 2001) (finding procedural unconscionability where an employer pressured employees to quickly sign documents written in a language they could not read without providing a translation); *see also H-E-B, LP v. Saenz*, 2021 WL 4733460, at *4 (Tex. App. — Houston 2021, no pet. h.) (comparing cases involving illiterate parties and noting the relevance of an employer explaining the agreement or making an explanation available).

Here, Corsaro has not produced evidence that Defendants hurried or pressured him to quickly sign the contract, declined to explain it upon his request, or otherwise knowingly took advantage of his disability by making an explanation unavailable to him. The procedural circumstances here are typical of those surrounding essentially every employee

ORDER – PAGE 10

onboarding process. Corsaro has pointed to no abnormality in contract procedure other than his disability. Accordingly, finding this agreement procedurally unconscionable would collapse the distinction between procedural unconscionability, which concerns the procedure of contracting, and mental incapacity, which concerns a person's ability to understand the agreement and its consequences. Thus, the Court holds the agreement is not procedurally unconscionable and Corsaro has not established the agreement is unenforceable.

### D.  Dismissal of Corsaro's Claims Is Appropriate

Although the FAA provides that a stay is mandatory when a plaintiff brings suit upon an issue referable to arbitration under a valid arbitration agreement, if "all of the issues raised before the district court are arbitrable, dismissal of the case is not inappropriate." *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999) (noting that staying the case would serve no purpose where any post-arbitration remedies sought by the parties would not entail renewed consideration and adjudication of the merits). In *Fedmet*, the Fifth Circuit noted the mandatory stay requirement means only that a district court "cannot deny a stay when one is properly requested," and that it "was not intended to limit dismissal of a case in the proper circumstances." *Id.* Because all Corsaro's claims against these defendants are subject to arbitration, a stay would serve no purpose and dismissal of the claims is appropriate.

### CONCLUSION

The Court holds dismissal would be improper under Rule 12(b)(1) or Rule 12(b)(6). Defendants met their burden to show a valid arbitration agreement exists and that Corsaro's

ORDER – PAGE 11

claims against them fall within the scope of that agreement. Corsaro failed to show the agreement is otherwise invalid or unenforceable due to procedural unconscionability or his mental incapacity. Accordingly, the Court grants the motion and exercises its discretion to dismiss all Corsaro's claims against Defendants Columbia Hospital at Medical City Dallas Subsidiary, L.P. and HCA Holdings, Inc. without prejudice.

Signed December 29, 2021.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 12